ORDERED.

Dated: February 19, 2026

Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

| | |
|---|---|
| USA STAFFING SERVICES, LLC, | Case No: 8:25-bk-04358-CPM |
| STAFFING MANAGEMENT GROUP, LLC, | Case No: 8:25-bk-04366-CPM |
| MK ULTRA INVESTMENTS, LLC | Case No: 8:25-bk-04368-CPM |
|     Debtors. | Chapter 11 Jointly Administered |
| _____/ | |

**ORDER APPROVING
DISCLOSURE STATEMENT, GRANTING MOTION FOR CRAMDOWN AND
CONFIRMING DEBTORS' PLAN
(Doc. Nos. 113, 190, and 169)**

THIS CASE came before the Court for hearing on February 5, 2026 at 11:00am ET (the "**Confirmation Hearing**") to consider **(i)** final approval of the *Debtors' Amended Joint Disclosure Statement for the Amended Joint Chapter 11 Plan or Reorganization* (Doc. No. 113) and *Notice of Filing New Plan Projections as Amended Exhibit B to the Disclosure Statement* (Doc. No. 170) (collectively, the "**Disclosure Statement**"), **(ii)** granting the *Debtors' Motion for Cramdown* (Doc. No. 190) (the "**Cramdown Motion**") and, **(iii)** confirmation of the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* (Doc. No. 169) (the "**Plan**"), all filed by the Debtors

USA Staffing Services, LLC ("**USA**"), Staffing Management Group, LLC ("**SMG**"), and MK Ultra Investments, LLC ("**MK Ultra**") (collectively with USA and SMG, the "**Debtors**").

Appearances were made at the Confirmation Hearing as reflected on the record. After considering the **(a)** Disclosure Statement, **(b)** Plan, **(c)** *Certificate of Service [of the Solicitation Package]* (Doc. No. 174) (the "**Solicitation Package**"), **(d)** *Ballot Tabulation* (Doc. No. 188) (the "**Ballot Tabulation**"), **(e)** *Debtors' Confirmation Declaration* (Doc. No. 189) (the "**Declaration**"), **(f)** Cramdown Motion, **(g)** the agreements, arguments, and proffers made at the Confirmation Hearing, and **(h)** the entire record in these chapter 11 cases, and for the reasons stated orally and recorded in open court that shall constitute the rulings, findings of fact, and conclusions of law as if specifically incorporated by the Court, the Court finds and concludes that the Disclosure Statement contains adequate information and disclosures, and, otherwise comports with Section 1125 of the Bankruptcy Code; and, the Plan has been proposed in good faith and meets all of the requirements of Sections 1129 of the Bankruptcy Code[1] and is fair and equitable, and does not discriminate unfairly with respect to each class of claims or interests and therefore should be confirmed.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure and Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure, the Court makes the following findings of fact and conclusions of law.[2]

---

[1] All references to the "**Bankruptcy Code**" are to the applicable section of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.
[2] Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, findings of fact shall be construed as conclusions of law and conclusions of law construed as findings of fact when appropriate.

During the Confirmation Hearing, the parties informed the Court that the parties had reached various agreements to resolve their disputes regarding confirmation issues, as set forth below:

A. **Plan Amendments Made on the Record in Open Court:**

1. **Alliance HR, LLC.** The Debtors and Alliance HR, LLC, ("**Alliance**") adopt by reference the treatment set forth in the Debtor's Plan. Specifically:

Alliance has an allowed unsecured claim in Class 9 in the allowed amount of $1.7 million. (the "**Alliance Claim**"). The Debtors' Adversary Proceeding against Alliance (25-ap-314-CPM) will be abated, as well as any pending motions and hearings concerning Alliance's claim or right to vote in this bankruptcy.

Furthermore, on the Effective Date of confirmation, the Adversary Proceeding will be dismissed with prejudice, each party to bear their own attorneys' fees and costs and the Debtors and Alliance will exchange mutual releases. Alliance will dismiss with prejudice its state court action under the same terms and conditions, and the Debtors will dismiss their counterclaim against Alliance, and each agrees not to file any other State Court actions against each other or the Debtors or their affiliates or principals with respect to their claim in this case or the substance of the disputes between the Debtors and Alliance.

Alliance will immediately provide Debtors with the necessary information in its possession for the 2025 Q1 tax filings. Alliance HR, LLC will reasonably cooperate with Debtors and designated payroll tax filer to provide all necessary information in Alliance's possession to file the Debtors' requisite payroll tax reports. This provision shall be confirmed and treated with respect to 9019 of the Bankruptcy Code and incorporated into any order confirming this Plan. This resolution between Alliance and the Debtors is integral to the Debtors' plan and must be approved as a part of it.

2. **Change Capital Holdings I, LLC.** The Debtors and Change Capital Holdings I, LLC, ("**Change Capital**") adopt the following treatment:

As of the Effective Date, the Change Capital Secured Claim shall be an Allowed Secured Claim (subject to the terms of an intercreditor agreement to be entered by REV Capital and Change Capital) in the amount of $920,000, subject to increase in accordance with the terms of this Plan relating to savings of projected vs. actual tax liability. On and after the Effective Date, the Liens and security interests securing the Change Capital Secured Claim pursuant to the Change Capital Security Agreement, Change Capital USA Staffing Pledge Agreement, New USA Pledge Agreement, and Change Capital SMG Pledge Agreement shall secure the Change Capital Secured Claim and the Debtors' obligations under this Plan related thereto, and such Liens and security

interests shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to the Change Capital Security Agreement, the Change Capital USA Staffing Pledge Agreement, New USA Pledge Agreement, and the Change Capital SMG Pledge Agreement, to the same extent and priority as that which was established in respect thereof under applicable non-bankruptcy law and subject to the terms of an intercreditor agreement to be entered by REV Capital and Change Capital, and (ii) as to the Debtors, not subject to avoidance, recharacterization, subordination, discharge, or release under any applicable law, the Plan or the Confirmation Order under facts existing as of the Effective Date of the Plan. Any financing statements filed by Change Capital prior to the Petition Date on account of the Debtors' obligations under the Change Capital Loan Documents are and shall remain in full force and effect following the Effective Date. Notwithstanding the foregoing or any other provisions herein, the Plan shall not be construed to suggest or imply that the Kolinski Guaranty is secured or nondischargeable or prohibited from any rights, claims, or defenses which may arise after the Effective Date.

On or before (as applicable) the Effective Date, the Debtors and Mr. Kolinski shall be authorized to execute, deliver, and enter into and perform under appropriate documentation (including, without limitation, new or amended financing statements) to assign, amend, modify, or supplement the Change Capital Loan Documents, and take any other action necessary or desirable, to effectuate the transactions contemplated by this Plan, including, without limitation, (i) the pledge by Mr. Kolinski of his membership interests in the Reorganized Debtor (the "**New USA Pledge Agreement**"), (ii) Change Capital's continuing Lien and continuing security interest in (x) all assets of USA, SMG, and Everest, and (y) 100% of the membership interests in SMG held by MK Ultra, and (iii) all other obligations of the Debtors, Reorganized Debtor and Mr. Kolinski to Change Capital under this Plan, in each case, to the extent such rights existed as of the Petition Date, on and following the Effective Date, without further (a) notice to or order or other approval of the Bankruptcy Court, (b) act or omission under applicable law, regulation, order, or rule, (c) vote, consent, authorization, or approval of any Person, or (d) action by Holders of Claims or interests. Prior to the Effective Date, the Debtors and Change Capital shall negotiate in good faith with respect to the terms of any necessary assignments, amendments, supplements or other modifications to the Change Capital Loan Documents to effectuate the transactions contemplated by the Plan and Confirmation Order. The Change Capital Loan Documents (as may be modified, amended, or supplemented in accordance with the terms of this Plan and the Confirmation Order or otherwise by agreement between the Debtors and Change Capital) shall constitute the legal, valid, binding and authorized obligations of Mr. Kolinski and the Reorganized Debtor (and, as applicable, SMG, MK Ultra, and Everest prior to their liquidation or dissolution in accordance with the terms of this Plan or otherwise), as applicable, enforceable in accordance with their terms, and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan (including, without limitation, Sections 7.1 and 7.2 hereof) or the Confirmation Order under facts existing as of the Effective Date of the Plan. Notwithstanding the foregoing or any other provisions herein, the Plan shall not be construed to suggest or imply that the Kolinski Guaranty is secured or nondischargeable or prohibited from any rights, claims, or defenses which may arise after the Effective Date.

Notwithstanding anything to the contrary in the Change Capital Loan Agreement, including without limitation section 4 thereof, Change Capital shall be under no obligation to make any Additional Advance (as defined in the Change Capital Loan Agreement).

3. **Article IX Unclaimed Distributions**: The Debtors amend the Plan to reflect a change from 120 days to 180 days for the period after the distribution of cash, assets, or other property under the Plan that remains unclaimed before the Reorganized Debtor[3] can apply unclaimed cash, assets, or other property toward the funding of this Plan:

Any cash, assets, or other property to be distributed under this Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto as of one hundred and eighty (180) calendar days after the distribution, shall become vested in the Reorganized Debtor to be applied toward the funding of this Plan. In any such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or distributions under this Plan pursuant to § 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distributions.

If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within 90 days of the date such check was issued, then the Reorganized Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within 90 days from the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtor as to such check within 180 days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

4. **Article VIII No Liability for Tax Claims:** The Debtors amend the Plan to reflect a new bar date, set forth below, after the Effective Date exclusively for taxing Governmental

---

[3] All capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Plan.

Authorities to assert a claim. The Debtors will serve a supplemental notice of this new Bar Date upon the required parties:

Governmental Bar Date, modifies Section 8.1 of the Plan: Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the deadline provided in the Notice of Governmental Claims Bar Date, prescribing a sixty (60) day period to file a Claim exclusively for Governmental Authority after the Effective Date of the Plan, no Claim of such Governmental Authority shall be allowed against the Debtors or the Reorganized Debtor or their respective members, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, any of their affiliates, or any other person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

5. **Execution of Intercreditor Agreement:** The Debtors shall execute the intercreditor and subordination agreement (the "**Intercreditor Agreement**") between and among the Debtor, Change Capital and REV Capital (California) Inc. ("**Rev Capital**"). This Confirmation Order and continued funding by REV Capital are contingent upon the execution and delivery of the Intercreditor Agreement to REV Capital. The Intercreditor Agreement shall be held in trust and released to REV Capital upon the Effective Date of the Plan.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. **Jurisdiction and Venue**. The Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Notice**. The Court finds that **(i)** timely and proper notice of the Confirmation Hearing, the time fixed for filing objections to the disclosures and/or confirmation, and the time for submitting ballots on the Plan were provided to all creditors and all parties in interest, **(ii)** such notice was adequate and sufficient to notify all creditors and all parties in interest of the Confirmation Hearing and the objection and voting deadlines as to the Disclosure Statement and

Plan, **(iii)** such notice complied in all respects with the procedural orders of this Court, the Bankruptcy Code, the Bankruptcy Rules[4] and otherwise satisfied due process, and **(iv)** the announcements made in open court do not require additional disclosures nor re-solicitation of votes.

      C.      <u>**Solicitation**</u>.  The Debtors and their attorneys have solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Scheduling Order, and are, therefore, entitled to the maximum protections afforded under the Bankruptcy Code.

      D.      <u>**Ballots**</u>.  The Ballot Tabulation as filed on February 3, 2025, reflects Classes 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14. Classes 1 and 12 are Unimpaired and therefore deemed to have accepted the Plan. Classes 2, 4, 9, and 11 are Impaired and affirmatively voted to accept the Plan. Debtors have at least one class of impaired creditors that have voted to accept the Plan pursuant to 11 U.S.C. § 1129(a)(10).  Classes 3, 5, 6, 7, 8, and 10 are Impaired, and, either did not vote or did not affirmatively vote to accept the Plan (collectively, the "**Non-Accepting Classes**"). The Plan fails to meet the requirement of 11 U.S.C. § 1129(a)(8), but the Debtors filed a Cramdown Motion requesting that the Court confirm the Plan pursuant to 11 U.S.C. § 1129(b) which was granted by the Court in the Confirmation Hearing.

      E.      <u>**Satisfaction of 1129**</u>.  The Plan satisfies all of the necessary requirements of §§ 1129(a) of the Bankruptcy Code other than (a)(8).  The Court specifically finds that **(a)** the Plan rationally and properly classifies the claims, clearly delineates between impaired and unimpaired classes and similarly treats claims within a particular class to comply with § 1129(a)(1); **(b)** the Debtors have complied with applicable provisions of the Bankruptcy Code as debtors in possession

---

[4] All references to the "**Bankruptcy Rules**" or "**Rules**" are to the applicable Federal Rules of Bankruptcy Procedure.

under § 1129(a)(2); **(c)** the Plan was proposed in good faith as referenced under § 1129(a)(3); **(d)** the Debtors have properly disclosed all payments made or to be made to their professionals under § 1129(a)(4); **(e)** Mr. Matthew Kolinski shall remain the Manager of the Reorganized Debtor post-confirmation as required to be stated under § 1129(a)(5); **(f)** the Plan does not contemplate any rate change with respect to any rate surcharge that is subject to the jurisdiction of any regulatory commissions under § 1129(a)(6); **(g)** the Plan is in the best interest of creditors as determined in part by the liquidation analysis attached to the Plan referenced under § 1129(a)(7); **(h)** all Impaired classes have not affirmatively voted in favor of the Plan satisfying § 1129(a)(8) but as set forth below § 1129(b) is satisfied; **(i)** the Plan complies with the requirements under § 1129(a)(9) including the requirements of § 1129(a)(9)(A) with respect to claims of the kind specified in § 507(a)(2) in that all such claims have been paid or will be paid on the Effective Date or the holder of such claim has otherwise agreed to different treatment; **(j)** at least one class of impaired claims has accepted the Plan determined without including any acceptance of the Plan by any insider under § 1129(a)(10); **(k)** as supported by the Disclosure Statement and Plan's exhibits, and the Declaration, the Plan is feasible as referenced under § 1129(a)(11); **(l)** all fees assessed and payable under 28 U.S.C. § 1930 have been paid or will be paid upon the Effective Date under § 1129(a)(12); **(m)** there are no retiree benefits to be paid after the Effective Date under § 1129(a)(13); **(n)** the Debtors are not required to pay any domestic support obligations and therefore is compliant with § 1129(a)(14); **(o)** the Debtors are not individuals, and therefore § 1129(a)(15) does not apply, and, **(p)** any transfers of property shall be made in accordance with applicable bankruptcy law as required by § 1129(a)(16).

**F.     Satisfaction of § 1129(b)**.  For the reasons further articulated in the Cramdown Motion and on the record at the Confirmation Hearing, the Plan does not discriminate unfairly, is fair and equitable, and otherwise complies with the conditions set forth in § 1129(b).

**G.     Satisfaction of § 1129(c)**.  The Plan is the one and only plan being considered for confirmation.

**H.     Satisfaction of § 1129(d)**.  The Plan satisfies all of the requirements of § 1129(d) of the Bankruptcy Code.  The Court specifically finds that the principal purpose of the Plan is not for the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 nor has there been any objection filed by any governmental unit asserting such avoidance.

**I.     Satisfaction of § 1129(e)**.  These are not small business cases, and therefore § 1129(e) does not apply.

**J.     Finding of Fact and Conclusions of Law**.  Where appropriate, a finding of fact shall be considered a conclusion of law and a conclusion of law shall be considered a finding of fact; all of which shall be incorporated into this Order's ruling.

**ACCORDINGLY, BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND ON THE FULL RECORD IN THE CASES, THE COURT HEREBY CONCLUDES, DECREES, FINDS AND ORDERS AS FOLLOWS:**

**1.     Objections**.  All objections to the Disclosure Statement and/or Plan, that could have been or were actually raised, have been withdrawn in open court or are hereby **OVERRULED.**

**2.     Disclosures**.  The Disclosure Statement complies with § 1125 of the Bankruptcy Code and is hereby finally **APPROVED** as containing adequate information—including but not limited to adequately detailing the risks involved—within the meaning of § 1125 of the Bankruptcy Code.

3. **Cramdown**. The Cramdown Motion is **GRANTED** with respect to Classes 3, 5, 6, 7, 8, and 10.

4. **Confirmation of Plan**. The Plan is hereby **CONFIRMED** pursuant to § 1129(a) of the Bankruptcy Code.

    A. **Binding Effect.** All terms of the Plan as modified by this Order, and all necessary and relevant documents, including without limitation the Intercreditor Agreement between Change Capital and REV Capital, and the settlement agreement with Alliance, are effective and binding upon the entry of this Order and the Effective Date. The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the Court's approval and authorization of, or the validity, binding effect and enforceability of such provision and each provision is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan, whether or not mentioned in this Order.

    B. **Burden of Proof**. The Debtors have met their burden of proving all of the necessary elements of § 1129 of the Bankruptcy Code.

    C. **Discharge**. Except as otherwise provided in the Plan and this Confirmation Order, on the Effective Date, Debtors will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code; except that the Debtor will not be discharged of any debt: **(i)** imposed by the Plan or **(ii)** to the extent provided in §§ 1141(d)(3) and/or 1141(d)(6).

    D. **Effectuating Documents**. The Reorganized Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan as modified herein.

E. **Exemption from Securities Laws**. To the maximum extent provided by § 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of the interests in the Reorganized Debtor is exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

F. **Exemption from Transfer Taxes**. To the maximum extent provided by § 1146(a) of the Bankruptcy Code and/or any other rule or statute of similar import, **(i)** the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, **(ii)** the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, and/or **(iii)** any sale by the Debtors consummated post-confirmation, and any other transfer from any entity pursuant to, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. State or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

G. **Exculpation, Injunction, and Releases**. All releases, injunctions, exculpations, settlements and compromises embodied in the Plan (as modified and supplemented by this Order), and the distributions and rights provided thereunder, are an integral part of the Plan. Pursuant to § 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases and

injunctions set forth in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors, their estates and creditors, and such provisions: **(i)** fall within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), (b) and (d); **(ii)** are essential means of implementing the Plan pursuant to § 1123(a)(5) of the Bankruptcy Code; **(iii)** are important to the overall objectives of the Plan to finally resolve all claims among or against the parties in interest in the bankruptcy cases, except to the extent otherwise provided in the Plan; and **(iv)** are consistent with §§ 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

For the avoidance of doubt, and notwithstanding anything to the contrary herein, the obligations relating to the Plan, as modified herein, and the obligations under any separately approved settlement agreements, are binding until all Plan payments are paid.

Except as otherwise set forth in the Plan, the Debtors and their agents, employees, officers, directors, managers, and shareholders; and the professionals for the Debtors (acting in such capacity) (collectively, the "Exculpated Parties") shall not have or incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to Plan, and any and all actions taken or omitted to be taken in connection with these Chapter 11 cases; provided, however, this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party or breach of any contract or any fiduciary duty.

The Plan and Mr. Kolinski's substantial contribution of a significant portion of his salary on and after the Effective Date is conditioned on Change Capital's release of the remainder of the Kolinski Guaranty at the end of the 6-year Plan period in accordance with the terms of this Plan. If Change Capital receives a minimum recovery of $1.3 million under the Plan with no defaults in payments due to Change Capital under the Plan or the Confirmation Order (subject to Section 7.3 of this Plan), Change Capital will release the Kolinski Guaranty at the end of the Plan period of 6years. If Change Capital does not receive a minimum of $1.3 million under the Plan (and/or following any default in Plan payments to Change Capital), the Kolinski Guaranty shall remain in effect (including, without limitation, payment of Change Capital's attorneys' fees and legal expenses incurred in connection with the enforcement of the Kolinski Guaranty to the extent the Change Capital Loan Documents provide for such payments under such circumstances) for the difference between $1.3 million and payments actually received by Change Capital under this Plan. For the avoidance of doubt, the Kolinski Guaranty shall remain in effect in accordance with its terms, and Change Capital will not release Mr. Kolinski from his obligations under the Kolinski Guaranty, until Change Capital receives a recovery of $1.3 million.

Following completion of the Plan Payments to Change Capital after the six-year Plan Period, provided that (i) no default to Change Capital occurred that was not cured in accordance with Section 7.3 of this Plan, and (ii) Change Capital has received a recovery of at least $1.3 million from and after the Effective Date in accordance with the terms of this Plan and the Confirmation Order, and except as otherwise provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, in exchange for Mr. Kolinski's substantial contribution to the Plan which largely inures to Change Capital's benefit, Change Capital and Mr. Kolinski shall release one another, effective as of the Kolinski Release Effective Date, from all Claims, interests,

obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever existing prior to the Kolinski Release Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each party would have been legally entitled to assert against the other based on or relating to debts incurred by or related to the Debtors, including the Kolinski Guaranty, which are dealt with in the Plan. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Mr. Kolinski's Substantial Contribution and this Release are integral components of the Plan. Change Capital's assent to the foregoing release was made affirmatively on its ballot, consenting to the terms of this Release, as a condition of confirmation of the Plan. The Parties agree that they shall execute such further documentation as may be necessary or desirable to effectuate this release as of the Kolinski Release Effective Date.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to § 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of Change Capital to facilitate and implement the Plan, except (i) for the right to enforce the Plan or any right or obligation arising thereunder that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, Change Capital is deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever,

including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, Change Capital's authorization of the Debtors' use of cash collateral, including all adequate protection payments made to Change Capital during the Chapter 11 Cases, the Debtors, the Change Capital Loan Facility, the Change Capital Loan Documents and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this section (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing Change Capital from Claims or Causes of Action arising from an act or omission that is judicially determined by a final order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these releases any Claims or Causes of Action arising under § 544 or § 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post Effective Date actions, omissions, or obligations of any

party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement executed to implement the Plan.

H. **Executory Contracts and Unexpired Leases**. Except as otherwise provided in the Plan Section 4.1 **(i) the** lease with VW Credit will be assumed and assigned to the USA Debtor from the SMG Debtor, **(ii)** the office lease for real property located at 3502 Henderson Boulevard, Unit 277, Tampa, Florida, 33609 will be assumed and assigned to the USA Debtor from the SMG Debtor, **(iii)** the contract with Bullhorn will be assumed and assigned to USA as part of the liquidation of SMG, **(iv)** all other executory contracts of SMG will be rejected as of the Effective Date, **(v)** all executory contracts of the USA Debtor will be assumed by USA and paid a cure amount of $0.00, and **(vi)** all executory contracts of MK Ultra will be rejected as of the Effective Date. All other contracts not otherwise identified are deemed rejected. Any claims arising from the rejection of an unexpired lease or executory contract shall be filed within thirty (30) days from the date of this Order or be forever barred.

I. **Final Fee Applications**. To the extent any professional seeks a fee award through and including the Effective Date in excess of any amounts estimated in any previously filed application, such professional shall file its respective application for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days from the date of entry of this Order. The final fee applications may be filed on negative notice.

J. **Governmental Approvals Not Required**. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or

modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement and any amendments or modifications thereto.

  **K.** **Jurisdiction and Venue**.  This Court has jurisdiction over the Debtors, the Debtors' chapter 11 cases, all of the Debtors' property, contracts, and assets, wherever located, all claims against and equity interests in the Debtors, and all holders of claims against and equity interests in the Debtors pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan as modified herein is a "core proceeding" pursuant to, without limitation, 28 U.S.C. § 157(b)(2)(A), (L), and (O), and this Court has jurisdiction to enter a final order with respect to confirmation.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

  **L.** **Liens**.  Except for any liens or security interests avoided by separate order, or as otherwise set forth in the Plan, the liens and security interests of creditors whose claims are secured by an interest in property of the Debtors will continue, for so long as the Debtors are obligated to the holder of the lien or security interest as a secured claimant.  For any liens that are avoided or otherwise extinguished, the Debtors may, but are not required to, file, record, or otherwise take measures to satisfy, terminate, or otherwise void the lien including but not limited to recordings in county records and filing a UCC-3 Termination Statement.

  **M.** **Notice of Effective Date**.  As soon as practicable, but no later than seven (7) business days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Court.

  **N.** **Preservation of Causes of Action**.  All causes of action and objections to claims not specifically resolved or released through the Plan, this Order, or by separate order of this Court are to be retained by the Reorganized Debtor, including but not limited to those against Alliance Sentry Event Services Inc., Critical Access Network LLC, and Gaia 5G.  The deadline

for the Reorganized Debtor to file any objections to claims or initiate any adversary proceedings shall be sixty (60) days from the entry of the Order.

   **O.**  **Omissions.**  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

   **P.**  **Property of the Estate.**  Except as otherwise expressly provided in the Plan, on the Effective Date, the Reorganized Debtor shall be vested with all of the assets and property of the Debtors, free and clear of all Claims, Liens, encumbrances, charges, and/or other interests of Holders of Claims or equity interests.

   **Q.**  **Retention of Jurisdiction**.  The Court's retention of jurisdiction as set forth in Section 6.8 of the Plan comports with the parameters contained in 28 U.S.C. § 157 and is to be interpreted as broadly as possible.

   **R.**  **Schedule of Payments.**  Within fourteen (14) days of the earlier of **(i)** the date the claims objection bar date passes or **(ii)** the date the last claims objection is resolved, the Debtors shall file a schedule summarizing the timing and amounts of payments to be made to each class of general unsecured creditors Classes 9-11.  Should the schedule further change due to adversary proceedings, agreements or other compromise of controversies, objections, or otherwise, the Debtors shall file the updated schedule within fourteen (14) days of the change.

   **S.**  **Treatment is in Full Satisfaction.**  All distributions under the Plan shall be made in accordance with the Plan by the Debtors.  The treatment set forth in the Plan is in full satisfaction of the legal, contractual and equitable rights (including any liens) that each entity holding a claim or interest may have in or against the Debtors, their estates, or their respective property.  This treatment supersedes and replaces any agreements or rights those entities may have

in or against the Debtors, their estates, or their respective property, or with respect to any obligations owed (or alleged to be owed) by the Debtors as of the entry of this Order which is approved as integral part of the Plan.

    **T.** **Vesting of Assets.** Except as otherwise provided in the Plan and this Confirmation Order, upon the Effective Date, pursuant to §§ 1141(b) and (c) of the Bankruptcy Code, all assets of the Debtors shall vest in the Reorganized Debtor, free and clear of all claims, liens, encumbrances, charges, and other interests, subject only to the allowed claims of those classes of holders of claims to be paid by disbursements from the Reorganized Debtor as set forth in the Plan.

    **5.** **Status Conference**. The Court will conduct a post confirmation status conference in these chapter 11 cases on May 28, 2026 at 3:00pm ET at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Courtroom 8B, Tampa, Florida 33602. All parties may attend the hearing in person. Parties are directed to review Judge McEwen's Procedures Governing Court Appearances (available at https://www.flmb.uscourts.gov/judges/mcewen) for her policies and procedures for remote attendances at hearings by video or telephone via Zoom.

###

Attorney Emanuel I. Flaquer is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Order.